FILED
CLERK, U.S. DISTRICT COURT
6/24/2026
CENTRAL DISTRICT OF CALIFORNIA
BY jji DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MITCHELL TAYLOR BUTTON<br><br>PLAINTIFF,<br>V.<br><br>BRIXTON FORGED WHEEL CO. LLC, ADAM MAJCHERKIEWICZ, CODY WILLISTON<br><br>DEFENDANTS. | Case No: 2:26-cv-07053-FMO-SSC(x)<br><br>COMPLAINT<br><br>JURY DEMAND |

## INTRODUCTION

1. This action arises from Defendants' recruitment of Plaintiff and the Button Built brand to design, launch, market, and commercialize an exclusive line of forged automotive wheels known as the BB01 Series, with "BB" signifying Button Built and "01" signifying the first in a series of wheel designs the parties intended to develop and commercialize together.
2. At all relevant times, Plaintiff was a recognized automotive designer, builder, content creator, and founder of the Button Built brand, which had developed substantial goodwill, domestic and international industry recognition, a significant social-media following, and a uniquely recognizable collection of custom vehicles within the automotive community.
3. Defendants specifically sought Plaintiff's participation because of Plaintiff's reputation, industry relationships, design expertise, marketing abilities, photography, videography, vehicle builds, and the goodwill associated with the Button Built brand.

4. Defendants proposed that Plaintiff collaborate exclusively with Brixton Forged to create and promote a new wheel line to be marketed under the Button Built name.

5. Defendants represented that Plaintiff would participate in the financial success of the wheel line and encouraged Plaintiff to devote substantial time, labor, creative works, marketing efforts, and industry resources to the project.

6. Relying on Defendants' representations, Plaintiff designed the series of wheels that became known as the BB01 Series and developed the branding, identity, styling concepts, and market positioning associated with that series; developed branding and marketing concepts for the wheel, participated in manufacturing and quality-control activities, created promotional content, provided photography and videography, supplied vehicles for promotional use, attended industry events, and publicly promoted the wheel line through Button Built's substantial audience.

7. Defendants repeatedly and publicly acknowledged that Plaintiff designed BB01 and marketed the wheel line as a Button Built collaboration.
8. Defendants utilized Plaintiff's name, reputation, goodwill, photographs, videos, written marketing materials, vehicles, and promotional efforts to establish consumer demand for the BB01 wheel line.
9. After the relationship between the parties deteriorated, Plaintiff instructed Defendants that production and commercialization of the wheel line should cease pending resolution of the parties' dispute.
10. Rather than honor Plaintiff's instructions, Defendants continued manufacturing, advertising, distributing, and selling the wheel line while excluding Plaintiff from the resulting profits.
11. Defendants further continued using Plaintiff's photographs, videos, vehicles, written marketing materials, and goodwill in connection with the promotion and sale of the wheel line.

12. Defendants subsequently removed references to Plaintiff and the Button Built brand from portions of their marketing materials while continuing to exploit the commercial value created through Plaintiff's efforts.

13. Upon information and belief, Defendants have generated substantial revenues from the continued sale of wheel sets derived from Plaintiff's work while failing to compensate Plaintiff as promised.

14. Plaintiff brings this action to recover damages, restitution, disgorgement of profits, injunctive relief, and all other remedies available under federal and state law.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and/or foreign citizens and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. Plaintiff is a citizen of the State of South Carolina.

17. Defendant Brixton Forged Co. LLC is, upon information and belief, a limited liability company organized under the laws of California with its principal place of business located in Los Angeles, CA.

18. Defendant Cody Williston is an individual residing in Los Angeles, CA and is a citizen of California.

19. Defendant Adam Majcherkiewicz is an individual residing in Los Angeles, CA and is a citizen of California.

20. The amount in controversy substantially exceeds $75,000 because Defendants have generated *substantial* revenues through the manufacture, marketing, and sale of wheel sets derived from Plaintiff's work, including wheel sets marketed and sold for approximately $12,000 to $16,000 per set, together with additional damages arising from Defendants' continued exploitation of Plaintiff's photographs, videos, written marketing materials, vehicles, goodwill, and business reputation.

21. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the claims over which this Court has original jurisdiction.

22. This Court additionally has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Lanham Act, 15 U.S.C. § 1125(a). The Court further has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

23. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District.

24. Venue is further proper because Defendants conducted business within this District, negotiated and performed substantial portions of the parties' relationship within this District, developed, marketed, and sold the products at issue within this District, and directed activities giving rise to Plaintiff's claims from within this District.

25. Plaintiff's claims arise directly from Defendants' conduct occurring within this District, including the formation of the parties' business relationship, development of the BB01 wheel line, use of Plaintiff's creative works, and Defendants' continuing commercialization of the products and materials at issue.

PARTIES

26. Plaintiff Mitchell Taylor Button ("Plaintiff") is the founder and owner of Button Built, an automotive brand known for vehicle design, modification, photography, content creation, and automotive-related marketing and promotion.

27. Plaintiff has spent years developing the Button Built brand and has established substantial goodwill and recognition within the automotive industry.

28. Prior to the events alleged herein, Plaintiff developed a significant audience through social media, automotive publications, vehicle exhibitions, industry events, and related promotional activities.

29. At all relevant times, Plaintiff owned and operated vehicles that were frequently featured in automotive publications, online media, promotional campaigns, and industry events.

30. Plaintiff's reputation, audience, design expertise, and industry influence were known to Defendants before the parties entered into their business relationship.

31. Defendant Brixton Forged Co. LLC ("Brixton") is, upon information and belief, a business engaged in the design, manufacture, marketing, and sale of high-end forged automotive wheels.

32. At all relevant times, Brixton conducted business throughout the United States, including within California and this District.

33. Defendant Cody Williston ("Cody") is the director of business development and cofounder and was at all relevant times an owner, officer, manager, employee, agent, representative, and/or principal of Brixton and acted within the course and scope of such authority.

34. Cody personally participated in the recruitment of Plaintiff, development of the parties' business relationship, marketing of the BB01 wheel line, and the acts and omissions complained of herein.

35. Defendant Adam Majcherkiewicz ("Adam") is the Chief Operating Officer and cofounder and was at all relevant times an owner, officer, manager, employee, agent, representative, and/or principal of Brixton and acted within the course and scope of such authority.

36. Adam personally participated in the recruitment of Plaintiff, development of the parties' business relationship, marketing of the BB01 wheel line, and the acts and omissions complained of herein.

37. At all relevant times, each Defendant acted as the agent, servant, employee, partner, joint venturer, representative, alter ego, and/or co-conspirator of each other Defendant and, in doing the things alleged herein, acted within the course and scope of such relationship.

## FACTUAL ALLEGATIONS

a. Plaintiff and the Button Built Brand

38. Long before Defendants first approached Plaintiff regarding a business relationship, Plaintiff had established the Button Built brand as a recognized name within the automotive industry through vehicle design, automotive products, content creation, sponsorship relationships, media exposure, and public appearances.

39. Through years of work, Plaintiff developed the Button Built brand, which became associated with high-end vehicle builds, automotive design, and automotive lifestyle content.

40. Plaintiff invested substantial time, labor, skill, creativity, and financial resources into developing the Button Built brand and its associated goodwill.

41. By approximately 2012, Button Built had accumulated a substantial social-media following and industry audience.

42. By 2012 Plaintiff had accumulated approximately 30,000 social-media followers, and by 2016 had accumulated nearly 100,000 followers. Plaintiff's reputation was further enhanced through sponsorships, collaborations, and promotional relationships with companies including Pelican Cases, Toyo Tires, Michelin, Mercedes-Benz, Ferrari, Pirelli, Brembo, Momo Racing, KW Suspension, Rotiform Wheels, Fifteen52 Wheels, Thule, PRP Seats, and numerous other automotive manufacturers and brands.

43. Plaintiff's work had been featured in automotive publications, websites, social-media campaigns, industry events, and related media including but not limited to Eurotuner, Super Street, Performance BMW, Speedhunters, PASMAG, Top Gear, AutoEvolution, Fast Car Magazine, Velocity TV, and numerous additional automotive publications.

44. In 2018, Plaintiff debuted the vehicle known as BB328 at the Specialty Equipment Market Association ("SEMA") Show in Las Vegas, Nevada.

45. BB328 received substantial attention within the automotive community and further elevated the profile of the Button Built brand.

46. BB328 was subsequently awarded "Best of Show" at SEMA, a competition involving more than 3,000 vehicles and attended by more than 200,000 spectators and industry participants.

47. As a result of Plaintiff's vehicle builds, publications, sponsorships, appearances, and promotional activities, the Button Built brand developed substantial goodwill, recognition, and influence within the domestic and international automotive industry.

48. Prior to Defendants' recruitment of Plaintiff, Button Built had become widely recognized among automotive enthusiasts, manufacturers, sponsors, publications, and industry professionals as a source of innovative vehicle design, content creation, and automotive branding.

49. Through these efforts, Plaintiff developed substantial goodwill, credibility, consumer recognition, and influence within the automotive industry.

50. Defendants were aware of Plaintiff's reputation, industry recognition, audience, influence, and uniquely recognizable vehicle collection before approaching Plaintiff regarding the relationship described herein.

51. Defendants specifically sought to associate themselves and Brixton Forged with the Button Built brand and to benefit from the goodwill Plaintiff had created.

52. Defendants understood that Plaintiff's reputation, audience, marketing abilities, industry relationships, and highly recognizable vehicles would substantially increase the visibility, credibility, and commercial success of Brixton products.

53. Defendants understood that Plaintiff's reputation, audience, and marketing abilities would substantially increase the visibility and commercial success of any collaborative product line. Defendants further understood that Plaintiff's uniquely recognizable vehicles and established reputation would substantially increase consumer interest in Brixton products.

b. Recruitment By Brixton and Formation of the Parties' Agreement

54. In November of 2018 during the SEMA show, Defendants Cody Williston and Adam Majcherkiewicz poached the Plaintiff regarding a potential business relationship involving the design, manufacture, marketing, and sale of forged automotive wheels.

55. At the time Defendants approached Plaintiff, Plaintiff maintained an existing relationship with Rotiform and was actively involved in automotive design, promotion, and content creation through the Button Built brand. Defendants further understood that Plaintiff's uniquely recognizable vehicles and established reputation would substantially increase consumer interest in Brixton products.

56. Defendants expressed a desire to distinguish Brixton from competing wheel manufacturers by creating products that would carry the credibility, reputation, and market appeal associated with Plaintiff and the Button Built brand.

57. During multiple conversations occurring both at SEMA in 2018 and shortly thereafter, Defendants represented that Brixton wished to create an exclusive wheel line centered around Plaintiff's design concepts and the Button Built identity.

58. Defendants specifically encouraged Plaintiff to discontinue or reduce his involvement with Rotiform and instead devote his time, efforts, reputation, and industry relationships toward Brixton.

59. Defendants represented that Plaintiff would not merely serve as a customer or promoter, but would instead serve as the designer, creative force, and public face of the proposed wheel line.

60. Defendants further represented that Plaintiff would share in the financial success of the wheel line and would be compensated in connection with the sale and commercialization of products developed through the relationship.

61. Defendants understood that Plaintiff would not have devoted the substantial time, labor, goodwill, vehicles, industry relationships, creative works, and resources required for the project absent those representations, nor would Plaintiff have redirected professional efforts away from existing industry relationships in reliance upon Defendants' promises.

62. Throughout the parties' discussions, Defendants repeatedly emphasized the importance of Plaintiff's reputation, audience, and industry influence.

63. Defendants sought access to the goodwill associated with the Button Built brand and intended to use Plaintiff's reputation to increase consumer interest in Brixton products.

64. Defendants knew that consumers trusted Plaintiff's recommendations and purchasing decisions within the automotive community.

65. Defendants represented that Plaintiff would play a central role in the design, branding, marketing, and launch of the wheel line.

66. Plaintiff accepted Defendants' proposal and thereafter began devoting substantial time, labor, expertise, creative works, and promotional efforts toward the development of the project.

67. In reliance upon Defendants' representations, Plaintiff redirected significant portions of his professional efforts toward Brixton and the development of the proposed wheel line.

68. Plaintiff's performance began shortly after the parties reached their agreement and continued for approximately one year.

69. Throughout the relationship, Defendants repeatedly reaffirmed Plaintiff's role as the designer and public representative of the wheel line.

70. Prior to and following the public release of the BB01 Series, Plaintiff promoted the collaboration through numerous automotive events and exhibitions, including Bimmerfest, Wekfest, StanceNation, Spocom, Fatlace/Illest promotional events, Cars and Coffee meets, and other industry events, utilizing Plaintiff's personal reputation, social-media audience, vehicles, sponsor relationships, and industry connections to increase awareness of Brixton Forged and BB01 Series.

71. Defendants never informed Plaintiff that they considered his contributions to be uncompensated, gratuitous, or without value.

72. To the contrary, Defendants consistently accepted and encouraged Plaintiff's continued contributions while benefitting from those contributions commercially.

73. Defendants knowingly accepted Plaintiff's services with the expectation that such services would generate revenue and increase the marketability of Brixton products.

74. Plaintiff reasonably relied upon Defendants' promises and conduct in continuing to perform under the parties' agreement.

75. Upon information and belief, Plaintiff's promotion of Brixton Forged and the BB01 Series resulted in substantial growth of Defendants' social-media presence and public visibility, including the acquisition of thousands of followers, customers, and industry contacts that continue to provide commercial value to Defendants today.

c. Creation, Development, and Commercialization of the BB01 Wheel Line

76. Following formation of the parties' agreement, Plaintiff began designing a wheel that would ultimately become known as the BB01.

77. Plaintiff conceived, designed and developed the BB01 series, including the wheel's appearance, styling, spoke configuration, visual identity, and market positioning.

78. Plaintiff selected the designation "BB01," which stood for "Button Built 01."

79. The designation BB01 was intentionally selected to identify the wheel line as a Button Built creation and to capitalize on the goodwill associated with the Button Built brand.

80. Plaintiff devoted substantial time to refining the design and working with Defendants to prepare the wheel for production.

81. During the development process, Plaintiff communicated regularly with Defendants regarding design revisions, production specifications, manufacturing concerns, quality control, branding, and marketing strategy.

82. Plaintiff traveled to Defendants' facilities on numerous occasions to participate in meetings, development activities, manufacturing oversight, promotional planning, and related business matters.

83. Defendants repeatedly sought Plaintiff's input regarding both the design and presentation of the wheel line.

84. Defendants understood that Plaintiff's involvement was a key component of the product's anticipated commercial success.

85. Throughout development, Defendants repeatedly acknowledged that Plaintiff designed BB01.

86. Defendants publicly promoted BB01 as a Button Built wheel and a Button Built collaboration.

87. Defendants published statements identifying Plaintiff as the designer of BB01.

88. Defendants promoted the BB01 Series using marketing materials published on Defendants' website and other platforms which expressly identified the wheel line as a collaboration with Plaintiff and the Button Built brand. Defendants' published materials included statements such as:

a. "This begins the collaboration with Button Built;"

b. "The Button Built BB328 is an unparalleled timeless creation;"

c. "Button found most of that spirit to be in the complexity of the center locking monoblock wheels. This spirit served as the inspiration for the face of the BB01;"

d. references describing the BB01 Series as a collaboration with Plaintiff and identifying Plaintiff's Ferrari 328GTS vehicle, creative vision, and design concepts as the basis for the wheel line.

89. Defendants' published materials further represented that Plaintiff's Ferrari 328GTS vehicle, Plaintiff's design philosophy, and Plaintiff's creative vision served as the inspiration for the BB01 Series and its market identity.

90. Defendants likewise promoted BB01 through social media posts, dealer communications, advertising materials, and other marketing channels identifying the wheel as associated with Button Built.

91. Defendants made such statements because they were true.

92. Consumers came to associate BB01 with Plaintiff and the Button Built brand.

93. Industry publications, consumers, dealers, and automotive enthusiasts understood BB01 to be a Button Built wheel.

94. Defendants actively encouraged and cultivated that association.

95. Defendants believed that the association between BB01 and Button Built would increase consumer demand and sales.

96. Defendants benefitted commercially from those efforts.

97. Plaintiff also participated extensively in the branding and marketing of BB01.

98. Defendants requested that Plaintiff prepare written marketing materials describing the BB01 Series, its design philosophy, inspiration, intended market position, and relationship to Plaintiff's Button Built brand.

99. Defendants requested that Plaintiff prepare written marketing materials describing the BB01 Series, the inspiration behind the designs, the styling concepts, engineering considerations, intended market position, and the design philosophy implemented by Plaintiff.

100. Defendants published Plaintiff's written materials on websites, social-media platforms, dealer pages, promotional materials, and related marketing channels.

101. Defendants further requested and received photographs created by Plaintiff and Plaintiff's wife for use in promoting BB01.

102. Plaintiff authored substantial portions of the written marketing materials used by Defendants to promote the BB01 Series on Defendants' website and marketing platforms.

103. Defendants published Plaintiff's written materials on the Brixton Forged website in connection with promotion of the BB01 Series and Plaintiff's Ferrari 328GTS vehicle.

104. Defendants' published materials expressly identified the wheel line as a collaboration with Button Built and repeatedly referenced Plaintiff by name.

105. Defendants further represented that the BB01 Series was developed in collaboration with Plaintiff and was inspired by Plaintiff's vehicle builds, design concepts, and creative vision.

106. Upon information and belief, Defendants continue utilizing substantial portions of Plaintiff's written marketing materials to promote the same wheel designs today.

107. Upon information and belief, Defendants subsequently removed references to Plaintiff and Button Built while retaining substantial portions of Plaintiff's original written content, marketing concepts, photography, and promotional materials.

108. Upon information and belief, Defendants further renamed or re-designated the BB01 Series while continuing to market the same wheel design using Plaintiff's vehicle, photography, and creative works.

109. Plaintiffs' wife was a world renowned ballerina sponsored by Red Bull and other large sponsors, who amassed nearly half a million followers on social media.

110. Plaintiff and Plaintiff's wife also created videos, social-media content, and related promotional materials that Defendants utilized in connection with the wheel line.

111. Defendants knowingly used Plaintiff's photographs, videos, vehicles, and written content to market and sell BB01.

112. Defendants did so with Plaintiff's knowledge and consent during the existence of the parties' relationship.

113. Plaintiff's vehicles became central marketing assets for the promotion of BB01.

114. Defendants prominently featured Plaintiff's vehicles in advertising, promotional campaigns, social-media content, websites, and dealer materials.

115. Defendants repeatedly used Plaintiff's reputation and public identity to increase interest in BB01.

116. Through these combined efforts, BB01 achieved significant recognition within the automotive community.

117. Defendants generated substantial commercial benefit from the goodwill, reputation, audience, creative works, and promotional efforts supplied by Plaintiff.

118. Upon information and belief, Plaintiff's promotion of the BB01 Series and Brixton Forged products resulted in a substantial increase

in Defendants' social-media audience, industry exposure, consumer recognition, and commercial visibility, benefits which Defendants continue to enjoy today.

d. Launch of BB01 and Plaintiff's Marketing Contribution

119. Following development of BB01, Plaintiff worked extensively with Defendants to prepare the wheel line for public release.

120. Plaintiff devoted substantial time and resources toward ensuring the successful launch of BB01.

121. Plaintiff utilized the Button Built brand, audience, reputation, and industry relationships to generate awareness and demand for BB01.

122. Plaintiff promoted BB01 through social media, automotive events, industry contacts, publications, direct engagement with consumers, and by encouraging sponsors, partners, manufacturers, and industry colleagues to share and redistribute content relating to the collaboration in order to expand its reach.

123. At the time BB01 was launched, Plaintiff maintained approximately 200k followers across social-media platforms.

124. Plaintiff's wife maintained approximately 500k followers across social-media platforms and likewise participated in promoting BB01.

125. Together, Plaintiff and Plaintiff's wife exposed BB01 to hundreds of thousands, potentially millions of automotive enthusiasts and potential consumers.

126. Plaintiff created and published numerous social-media posts promoting BB01 and the relationship between Button Built and Brixton.

127. Defendants frequently reposted, shared, referenced, and otherwise utilized Plaintiff's content to market BB01.

128. Plaintiff's promotional efforts substantially increased public awareness of both BB01 and Brixton.

129. Plaintiff's promotional activities substantially increased visibility of both Brixton Forged and the BB01 Series. Upon information and belief, Defendants gained thousands of social-media followers through Plaintiff's promotional efforts, many of whom continue following Defendants today.

130. Plaintiff attended and promoted BB01 at numerous automotive events, including Bimmerfest, Wekfest, StanceNation, Spocom, Run Rally, Sunset Gran Turismo, Cars and Coffee gatherings, and other automotive exhibitions and promotional events.

131. Plaintiff attended automotive events, exhibitions, promotional gatherings, and related industry functions in support of BB01.

132. Plaintiff transported vehicles to promotional events at his own expense and devoted substantial personal time toward promoting the wheel line.

133. Defendants regularly utilized Plaintiff's vehicles as centerpiece marketing assets for BB01.

134. Defendants prominently displayed Plaintiff's vehicles in advertising campaigns, social-media content, websites, dealer materials, and promotional publications.

135. Plaintiff's vehicles became closely associated with BB01 and the Button Built brand.

136. Defendants understood that consumers were attracted not only to the wheel itself but also to the reputation, aesthetic identity, and credibility associated with Plaintiff and Button Built.

137. Following publication of the BB01 Series marketing materials, Defendants distributed product descriptions, photographs, and promotional content to authorized dealers, distributors, and resellers for use in advertising and sales.

138. Defendants supplied or caused to be supplied marketing materials, photographs, product descriptions, and promotional content to dealers and distributors for use in advertising and selling the BB01 Series.

139. Upon information and belief, numerous third-party dealers and distributors continue to market the wheel line using the “BB01” designation and continue identifying the product as a Button Built design.

140. Multiple dealers continue displaying photographs of Plaintiff’s vehicles equipped with BB01 wheels, including images originally created and owned by Plaintiff.

141. Multiple dealers continue using Plaintiff's photographic works and promotional materials in connection with advertising the BB01 Series.

142. Upon information and belief, certain dealer listings simultaneously reference both "BB01" and revised designations used by Defendants (including BF01), resulting in inconsistent and conflicting product identification across the marketplace.

143. Upon information and belief, the continued use of Plaintiff's photographs, written materials, and BB01 branding by third-party dealers is based on marketing content originally supplied, approved, or disseminated by Defendants.

144. As a result, consumers and industry participants are exposed to inconsistent branding and continue associating the BB01 Series with Plaintiff and the Button Built brand.

145. Defendants repeatedly encouraged Plaintiff to continue promoting BB01 and accepted the benefits of Plaintiff's efforts.

146. Defendants never advised Plaintiff that his contributions would be uncompensated.

147. Defendants never advised Plaintiff that they intended to claim exclusive ownership over Plaintiff's marketing materials, photographs, videos, branding concepts, or goodwill.

148. Defendants knowingly accepted the benefits of Plaintiff's efforts while continuing to expand sales of BB01.

149. As a direct result of Plaintiff's contributions, BB01 achieved substantial visibility within the automotive marketplace.

150. Defendants derived significant commercial value from the goodwill, audience, reputation, creative works, and promotional efforts supplied by Plaintiffs.

151. Upon information and belief, Defendants have begun rebranding or redesignating the BB01 Series under alternative nomenclature, including BF01, while continuing to market substantially the same wheel design.

152. Defendants' revised marketing materials remove references to Plaintiff and Button Built while retaining substantial portions of Plaintiff's original written content, design concepts, and promotional structure.

153. Defendants continue to use Plaintiff's vehicle, photography, and creative works in connection with marketing the same wheel design under modified branding.

154. The continued use of the BB01 designation by dealers, combined with Defendants' revised branding efforts, has created inconsistent product identification in the marketplace.

155. Consumers and industry participants encountering Defendants' products are presented with conflicting information regarding the origin, authorship, and affiliation of the BB01 Series.

156. Upon information and belief, consumers encountering the BB01 Series today continue associating the product with Plaintiff and the Button Built brand because Defendants themselves created and promoted that association throughout the launch, marketing, and commercialization of the wheel line.

157. Upon information and belief, consumers continue associating the BB01 Series with Plaintiff and the Button Built brand based on prior marketing, publications, and widespread industry exposure.

e. Breakdown of the Relationship

158. During approximately August 2019, while Plaintiff was devoting substantial time, effort, and financial resources toward preparing a new vehicle and additional BB01-series products for future promotional activities and SEMA-related marketing, the relationship between the parties began to deteriorate.

159. During approximately August 2019, Plaintiff became aware of conduct by Defendant Cody Williston that caused Plaintiff to question whether the parties' business relationship could continue.

160. Plaintiff was further subjected to communications and conduct that Plaintiff reasonably perceived as hostile, threatening, and inconsistent with the professional relationship previously represented by Defendants.

161. As a result of those events, Plaintiff concluded that continuation of the relationship would not be in his personal or professional interests.

162. Plaintiff further became aware of conduct by Defendants which Plaintiff believed to be unethical, improper, and inconsistent with the business relationship Defendants had represented to Plaintiff. Those concerns contributed to Plaintiff's decision to terminate the relationship.

163. Following the incident, Plaintiff attempted to communicate with Cody regarding the matter.

164. Plaintiff also communicated with Adam concerning the future of the relationship and the status of the BB01 wheel line.

165. Plaintiff informed Adam that the parties' business relationship could not continue under the existing circumstances.

166. Plaintiff further instructed that production, commercialization, and sale of the wheel line should cease pending further resolution of the dispute.

167. In or around September of 2019, Plaintiff informed Defendants that Plaintiff no longer wished to participate in the business relationship and instructed Defendants to discontinue use of Plaintiff's name, association, and goodwill in connection with future commercialization efforts.

168. Plaintiff communicated this instruction through telephone calls and voicemail messages directed to Defendants Adam Majcherkiewicz and Cody Williston. During those communications, Plaintiff stated in substance that, as a result of Cody Williston's conduct, threats, and other circumstances that had arisen during the parties' relationship, Plaintiff no longer wished to participate in the collaboration, no longer wished for his name or reputation to be associated with Brixton Forged, and expected Defendants to discontinue further commercialization of the BB01 Series in connection with Plaintiff, Button Built, or Plaintiff's goodwill.

169. Defendants acknowledged receipt of Plaintiff's communication.

170. Adam responded Adam responded in substance, "Oh my God man, what has Cody done now? I will reach out to him and fix this."

171. Adam thereafter discussed future wheel projects and upcoming promotional activities, leading Plaintiff to believe Defendants understood the seriousness of the dispute and intended to address it.

172. Based upon Adam's response and the parties' prior relationship, Plaintiff reasonably believed Defendants would suspend further commercialization of BB01.

173. Following the breakdown of the parties' relationship, Plaintiff submitted an itemized accounting of expenses and contributions incurred in connection with the BB01 Series project.

174. The accounting included, among other things, costs associated with vehicle transportation, event attendance, accommodations, promotional activities, content creation, photography, videography, written marketing materials, licensing of Plaintiff's name and goodwill, licensing of Plaintiff's creative works, and time devoted to developing and promoting the collaboration.

175. The accounting further included compensation sought for a set of BB01 wheels belonging to and owned by Plaintiff that remained in Defendants' possession.

176. Rather than addressing Plaintiff's concerns or compensating Plaintiff, Defendants ceased communications and blocked Plaintiff from further contact.

177. Defendants retained possession of Plaintiff's BB01 wheel set after representing that the wheels were needed for measurement, development, promotional activities, or preparation of future wheel designs.

178. Despite Plaintiff's requests for return of the property, Defendants failed and refused to return the wheels.

179. Upon information and belief, Defendants subsequently transferred, sold, or otherwise disposed of the wheels without Plaintiff's authorization.

180. Plaintiff did not authorize Defendants to continue profiting from Plaintiff's work while concealing those activities from Plaintiff.

181. Plaintiff did not authorize Defendants to continue utilizing Plaintiff's identity, goodwill, creative works, photographs, videos, vehicles, or written marketing materials after the relationship ended.

182. Defendants nevertheless continued commercializing the wheel line.

f. Termination of Communications and Loss of Visibility

183. Shortly after the parties' dispute, Defendants ceased communication with Plaintiff.

184. Defendants stopped responding to Plaintiff's communications.

185. Defendants blocked Plaintiff on social-media platforms.

186. Defendants blocked Plaintiff's wife on social-media platforms.

187. Defendants blocked or otherwise prevented Plaintiff from communicating through channels that had previously been used throughout the parties' relationship.

188. Plaintiff's efforts to obtain information concerning Defendants' activities were unsuccessful.

189. Defendants never informed Plaintiff that production continued following the parties' separation.

190. Defendants never informed Plaintiff that sales continued.

191. Defendants never informed Plaintiff that Plaintiff's photographs, videos, written marketing materials, vehicles, or other

creative works continued being used in connection with the wheel line and company.

192. Defendants never informed Plaintiff that BB01 remained in active production.

193. Defendants never informed Plaintiff that Plaintiff's photographs remained in commercial use.

194. Defendants never informed Plaintiff that Plaintiff's videos remained in commercial use.

195. Defendants never informed Plaintiff that Plaintiff's written marketing materials remained in commercial use.

196. Defendants never informed Plaintiff that Plaintiff's vehicles continued to be featured in advertising and promotional materials.

197. Defendants never informed Plaintiff that dealers and distributors continued marketing BB01 series as associated with Button Built.

198. In approximately 2021, Plaintiff relocated from California.

199. Following the relocation, Plaintiff's interaction with the Southern California automotive community substantially decreased.

200. In approximately December of 2021, Plaintiff discontinued use of the social-media platforms through which much of the parties' collaboration had occurred.

201. Plaintiff no longer maintained the accounts through which Defendants had historically communicated and promoted BB01.

202. As a result, Plaintiff lacked visibility into Defendants' ongoing business activities and marketing efforts.

203. Plaintiff reasonably believed Defendants had honored his instruction to cease production and commercialization.

204. Defendants took no action to inform Plaintiff otherwise.

g. Continued Exploitation of Plaintiff’s Works, Goodwill, and Identity

205. Unknown to Plaintiff, Defendants continued manufacturing, marketing, distributing, and selling the BB01 wheel line after the parties' relationship ended.

206. Defendants continued doing so without Plaintiff's participation and without compensating Plaintiff.

207. Defendants continued generating revenue from products that had been developed through Plaintiff's efforts, reputation, creative contributions, marketing activities, and goodwill.

208. Upon information and belief, Defendants represented to consumers that they operated from a Beverly Hills location in order to convey an image of luxury, exclusivity, and commercial success.

209. Upon information and belief, Defendants continued producing substantially the same wheel design originally developed and promoted as BB01.

210. Defendants continued offering the wheel through Brixton's website, dealer network, social-media channels, marketing materials, and other commercial outlets.

211. Upon information and belief, Defendants sold numerous wheel sets following the parties' separation.

212. Upon information and belief, wheel sets derived from the BB01 design were sold for approximately $12,000 to $16,000 per set.

213. Defendants retained all revenues generated from those sales.

214. Plaintiff received none of the compensation previously promised and none of the profits generated through Defendants' continuing commercialization of the wheel line.

215. Defendants also continued utilizing materials created by Plaintiff and Plaintiff's wife.

216. Defendants continued displaying photographs created by Plaintiff.

217. Defendants continued displaying photographs created by Plaintiff's wife.

218. Defendants continued displaying videos created by Plaintiff and Plaintiff's wife.

219. Defendants continued displaying vehicles owned by Plaintiff.

220. Defendants continued displaying content depicting Plaintiff's automotive builds.

221. Defendants continued utilizing written marketing materials originally authored by Plaintiff.

222. Defendants continued benefitting from consumer goodwill generated through Plaintiff's efforts.

223. Upon information and belief, Defendants continued deriving commercial value from Plaintiff's association with the BB01 Series even after removing Plaintiff's name from portions of Defendants' marketing materials.

224. Defendants knew that consumers, dealers, publications and industry participants associated the BB01 series with Plaintiff and the Button Built brand.

225. Defendants further knew that substantial portions of the BB01 Series' commercial value, recognition, and market acceptance had been created through Plaintiff's design work, reputation, marketing efforts, audience, creative content, and industry recognition.

226. Despite that knowledge, Defendants continued exploiting those benefits while excluding Plaintiff from participation, attribution, and compensation.

227. Plaintiff did not discover that Defendants had continued commercializing the BB01 Series, continuing to use Plaintiff's creative works, or continuing to benefit from Plaintiff's goodwill until

approximately March 2026, when Plaintiff was contacted by a third party regarding the continued sale and marketing of the wheel line.

228. Defendants nevertheless continued exploiting those benefits while excluding Plaintiff from participation and compensation.

229. At no time following the parties' separation did Defendants obtain Plaintiff's permission to continue utilizing Plaintiff's photographs, videos, written materials, vehicles, or associated goodwill on a permanent basis.

230. At no time following the parties' separation did Plaintiff execute any written agreement granting Defendants an unrestricted or perpetual right to continue exploiting such materials.

h. Removal of Button Built Attribution

231. During the parties' relationship, Defendants publicly identified Plaintiff as the designer of BB01.

232. Defendants publicly represented that BB01 was a Button Built wheel and/or a collaboration with Button Built.

233. Defendants repeatedly promoted BB01 through statements identifying Plaintiff and the Button Built brand.

234. Such representations appeared on Defendants' website, dealer pages, promotional materials, social-media content, and other marketing channels.

235. Defendants made those representations because they accurately reflected Plaintiff's role in creating and launching the wheel line.

236. Following the parties' separation, Defendants gradually removed references to Plaintiff and Button Built from portions of their marketing materials.

237. Upon information and belief, Defendants did so while continuing to market substantially the same wheel design.

238. Upon information and belief, Defendants subsequently re-designated the BB01 Series under alternative nomenclature, including "BF01," while continuing to market substantially the same wheel design, utilizing the same design concepts, promotional materials, photographs, written marketing content, and marketplace goodwill originally developed in association with Plaintiff and the Button Built brand.

239. Defendants removed references identifying Plaintiff as the designer while continuing to exploit the commercial value created by Plaintiff.

240. Defendants removed references to Button Built while continuing to benefit from years of consumer recognition associating the wheel with Plaintiff.

241. In some instances, Defendants retained substantial portions of Plaintiff's original marketing language while merely deleting Plaintiff's name.

242. For example, Defendants originally published marketing materials expressly identifying the wheel line as a collaboration with Plaintiff and repeatedly referring to Plaintiff, the Button Built brand, Plaintiff's Ferrari 328GTS vehicle, and Plaintiff's design philosophy.

243. Upon information and belief, Defendants later revised those materials by removing references to Plaintiff and Button Built while retaining substantial portions of the underlying language originally authored by Plaintiff.

244. Upon information and belief, Defendants likewise replaced references to the BB01 designation with alternative designations while continuing to market substantially the same wheel design originally developed and promoted as the BB01 Series.

245. Upon information and belief, Defendants continued displaying photographs depicting Plaintiff's vehicles equipped with BB01 wheels while simultaneously removing attribution identifying Plaintiff as the designer and creator of the wheel line.

246. In some instances, Defendants retained photographs, videos, vehicles, and promotional content associated with Plaintiff while removing references identifying Plaintiff as the creator.

247. Defendants thereby attempted to appropriate for themselves the goodwill and commercial value previously associated with Plaintiff and Button Built.

248. Upon information and belief, Defendants further modified product descriptions, marketing materials, and related content to obscure Plaintiff's involvement in the creation and development of the wheel line.

249. Plaintiff discovered that multiple authorized dealers, distributors, and resellers continued marketing the wheel line using the BB01 designation years after Defendants purportedly removed Plaintiff's association from portions of Defendants' own marketing materials.

250. Plaintiff further discovered that dealer websites continued describing the wheel line as associated with Button Built and continued displaying photographs depicting Plaintiff's vehicles equipped with BB01 wheels.

251. Upon information and belief, such dealers obtained product descriptions, photographs, marketing materials, and promotional content directly or indirectly from Defendants.

252. The continued marketplace use of the BB01 designation demonstrates that consumers, dealers, and industry participants continued associating the wheel line with Plaintiff and the Button Built brand.

253. Defendants did not compensate Plaintiff for the continuing use of Plaintiff's work, goodwill, or commercial identity.

i. Continuing Association Between BB01 and Button Built

254. Despite Defendants' efforts to remove references to Plaintiff, consumers continued associating BB01 with Plaintiff and Button Built.

255. Dealers continued advertising BB01 as a Button Built wheel.

256. Dealers continued describing BB01 as having been designed by Plaintiff.

257. Online discussions continued identifying Plaintiff as the creator of BB01.

258. Consumers continued recognizing BB01 as a product associated with Plaintiff and the Button Built brand.

259. Defendants were aware of that continuing association.

260. Defendants nevertheless continued exploiting the benefits of that association while denying Plaintiff any participation in the resulting revenues.

261. Defendants continued benefitting from years of goodwill that had been created through Plaintiff's efforts.

262. The commercial success of the wheel line remained tied, in substantial part, to the reputation, recognition, and goodwill Plaintiff had previously developed.

j. Delayed Discovery

263. Plaintiff did not discover Defendants' continuing conduct immediately following the parties' separation.

264. Plaintiff reasonably believed Defendants had honored his instruction that production and commercialization should cease.

265. Defendants never informed Plaintiff that production continued.

266. Defendants never informed Plaintiff that sales continued.

267. Defendants never informed Plaintiff that Plaintiff's photographs remained in commercial use.

268. Defendants never informed Plaintiff that Plaintiff's videos remained in commercial use.

269. Defendants never informed Plaintiff that Plaintiff's written materials remained in commercial use.

270. Defendants never informed Plaintiff that Plaintiff's vehicles remained in commercial use.

271. Plaintiff discovered Defendants' conduct after receiving a communication from a longtime friend and automotive-industry contact who provided Plaintiff with photographs depicting a wheel design that Plaintiff immediately recognized as the BB01 Series. The individual asked Plaintiff whether Plaintiff had approved the removal of the BB01 designation and Plaintiff's association with the wheel line. Following receipt of that communication, Plaintiff conducted additional investigation and discovered that Defendants continued manufacturing, marketing, and selling substantially the same wheel designs while removing references to Plaintiff and Button Built.

272. Defendants never informed Plaintiff that Defendants continued profiting from the wheel line.

273. Following the parties' separation, Plaintiff no longer had access to the communication channels through which the relationship had historically operated.

274. Defendants had blocked Plaintiff and Plaintiff's wife from social-media platforms and other communication channels.

275. Plaintiff further discovered that Defendants continued utilizing marketing language originally authored by Plaintiff.

276. Plaintiff further discovered that Defendants continued utilizing photographs depicting Plaintiff's vehicles.

277. Plaintiff further discovered that numerous dealers continued advertising the wheel line using the BB01 designation and continued associating the wheel line with Plaintiff and Button Built.

278. Plaintiff further discovered that Defendants had revised portions of their own marketing materials to remove references to Plaintiff while continuing to exploit the goodwill and recognition previously created through Plaintiff's involvement.

279. Plaintiff had relocated away from Southern California and was no longer regularly participating in the automotive community through which he would otherwise have learned of Defendants' activities.

280. Plaintiff had also discontinued use of the social-media accounts that had previously served as the primary means through which Defendants promoted the wheel line.

281. As a result, Plaintiff lacked visibility into Defendants' continuing conduct.

282. Plaintiff first discovered that Defendants continued manufacturing, marketing, and commercializing the BB01 Series on or about March of 2026.

283. Plaintiff discovered Defendants' conduct after receiving a message from a longtime friend and automotive industry contact who sent Plaintiff a photograph depicting a wheel that Plaintiff immediately recognized as the BB01 Series design. The friend asked Plaintiff whether Plaintiff had authorized the removal of the "BB01" designation and Plaintiff's association with the product. Upon reviewing the image and conducting further investigation, Plaintiff discovered that Defendants continued manufacturing, marketing, and selling the same wheel designs originally created by Plaintiff while removing references to Plaintiff and Button Built.

284. Plaintiff has already received inquiries from members of the automotive community concerning whether Plaintiff authorized, approved, sponsored, endorsed, or remained affiliated with

Defendants' continued commercialization of the BB01 Series and successor products.

285. Plaintiff further discovered that numerous authorized dealers, distributors, and resellers continued marketing the wheel line using the BB01 designation years after Defendants began removing Plaintiff's attribution from portions of their own marketing materials.

286. Plaintiff further discovered that multiple dealer websites continued describing the wheel line as a Button Built product while displaying photographs of Plaintiff's vehicles equipped with BB01 wheels.

287. Plaintiff further discovered that certain dealer websites displayed Plaintiff's photographs and promotional content while simultaneously utilizing revised product designations associated with Defendants.

288. Upon information and belief, such dealer materials originated from marketing content, photographs, descriptions, and promotional assets supplied, approved, or distributed by Defendants.

289. Prior to March 2026, Plaintiff had no reason to believe Defendants continued manufacturing or selling the BB01 Series because Defendants had ceased communications with Plaintiff, blocked Plaintiff from communication channels, Plaintiff had relocated from California, and Plaintiff reasonably believed the parties' business relationship and related commercialization efforts had ended years earlier.

290. Plaintiff exercised reasonable diligence throughout the relevant period. Because Defendants ceased communications, blocked Plaintiff from communication channels, Plaintiff relocated from California, and Defendants never informed Plaintiff that commercialization of the BB01 Series continued, Plaintiff had no reasonable basis to suspect that Defendants remained engaged in the conduct alleged herein until March 2026.

291. Following that discovery, Plaintiff conducted additional investigation.

292. Plaintiff thereafter discovered that Defendants had continued utilizing Plaintiff's photographs, videos, vehicles, written materials, goodwill, and reputation.

293. Plaintiff further discovered that Defendants had removed references to Plaintiff while continuing to exploit the commercial value created through Plaintiff's efforts.

294. Plaintiff could not reasonably have discovered these facts earlier because Defendants concealed their continuing conduct, blocked communications, removed Plaintiff from the relationship, and continued operating outside Plaintiff's visibility.

295. Following discovery of Defendants' continued commercialization of the BB01 Series, Plaintiff conducted additional investigation regarding the manner in which the products were being marketed and distributed.

296. Plaintiff discovered that numerous authorized dealers, distributors, and resellers continued marketing and advertising the wheel line using the BB01 designation and continued identifying the products as Button Built wheels.

297. Plaintiff further discovered that multiple dealers continued displaying photographs depicting Plaintiff's vehicles equipped with BB01 wheels bearing the BB01 designation.

298. Plaintiff further discovered that multiple dealers continued displaying Plaintiff's photographs, marketing materials, and written content originally prepared in connection with the collaboration between Plaintiff and Defendants.

299. Upon information and belief, the continued use of the BB01 designation by independent dealers resulted from marketing materials, product descriptions, photographs, and promotional content originally supplied or authorized by Defendants.

300. Plaintiff further discovered that Defendants had begun utilizing revised product designations while simultaneously continuing to benefit from existing marketplace recognition of the BB01 designation and Plaintiff's association with the wheel line.

301. As a result, consumers encountering Defendants' products, dealer websites, promotional materials, and online advertising are

presented with conflicting information regarding the origin, authorship, affiliation, sponsorship, and identity of the wheel line.

302. Upon information and belief, consumers and industry participants continue associating the BB01 Series with Plaintiff and the Button Built brand.

303. Plaintiff commenced this action promptly after discovering the facts giving rise to his claims.

k. Copyrighted Materials, Photographs, Videos, and Written Content

304. Throughout the parties' relationship, Plaintiff and Plaintiff's wife, Dusty Button, created substantial original content for use in connection with the marketing and promotion of BB01 and related Brixton products.

305. Defendants actively requested, encouraged, and accepted the creation of such content.

306. The content created by Plaintiff and Dusty Button included, among other things, original photographs, promotional videos, social-media content, written marketing materials, website copy, event coverage, vehicle photography, and related creative works.

307. Plaintiff is presently investigating registration status and ownership records relating to certain photographs, videos, written materials, and other creative works described herein.

308. Plaintiff expressly reserves the right to amend this Complaint to assert additional claims arising from such works following completion of that investigation and any required registration procedures.

309. Plaintiff personally authored substantial portions of the written marketing materials used by Defendants to promote BB01.

310. Defendants specifically requested that Plaintiff prepare written descriptions concerning the design, development, engineering, styling, intended use, and market positioning of BB01.

311. In response to Defendants' requests, Plaintiff prepared original written content for publication on Defendants' website and related marketing channels.

312. Defendants thereafter published Plaintiff's written materials and utilized them in connection with the marketing and sale of BB01.

313. During the parties' relationship, Defendants publicly identified Plaintiff as the designer of BB01 and associated the published materials with Plaintiff and the Button Built brand.

314. Plaintiff and Dusty Button also created numerous original photographs depicting BB01, Plaintiff's vehicles, automotive events, promotional activities, and related subject matter.

315. Many of those photographs were created specifically for use in connection with the launch and promotion of BB01.

316. Defendants requested, received, published, displayed, distributed, and otherwise utilized those photographs for commercial purposes.

317. Plaintiff and Dusty Button likewise created original video content relating to BB01, Plaintiff's vehicles, automotive events, promotional activities, and the parties' collaboration.

318. Defendants requested, received, published, displayed, distributed, and otherwise utilized such video content for commercial purposes.

319. Defendants understood that Plaintiff and Dusty Button were the creators of the photographs and videos utilized in Defendants' marketing materials.

320. Upon information and belief, Defendants continue displaying portions of Plaintiff's written marketing materials while removing references identifying Plaintiff as the author of those materials.

321. Upon information and belief, Defendants continue utilizing marketing concepts, descriptions, and promotional narratives originally created by Plaintiff in connection with commercialization of the BB01 Series and successor products.

322. Upon information and belief, Defendants continue utilizing photographs depicting Plaintiff's vehicles and wheel designs while omitting Plaintiff's attribution and involvement in the creation of the wheel line.

323. Defendants further understood that the written marketing materials published on Defendants' website had been authored by Plaintiff.

324. At no time did Plaintiff execute a written agreement transferring ownership of the photographs, videos, written materials, or other creative works to Defendants.

325. At no time did Dusty Button execute a written agreement transferring ownership of photographs, videos, or other creative works to Defendants.

326. At no time did Plaintiff grant Defendants an unrestricted, perpetual, irrevocable, or exclusive right to continue exploiting such materials following the termination of the parties' relationship.

327. Any permission granted during the parties' collaboration was provided solely in connection with the ongoing business relationship between the parties.

328. Defendants' authority to utilize Plaintiff's and Dusty Button's creative works was therefore dependent upon and connected to the parties' continuing collaborative relationship.

329. Following the breakdown of the parties' relationship, Defendants continued displaying and utilizing Plaintiff's and Dusty Button's creative works.

330. Defendants continued displaying photographs created by Plaintiff.

331. Defendants continued displaying photographs created by Dusty Button.

332. Defendants continued displaying vehicles owned by Plaintiff and associated with the Button Built brand.

333. Defendants continued displaying written marketing materials authored by Plaintiff.

334. Defendants continued utilizing such materials to promote and sell products for Defendants' commercial benefit.

335. Upon information and belief, Defendants removed references identifying Plaintiff as the author, designer, creator, or source of certain materials while continuing to display and exploit those materials.

336. Upon information and belief, Defendants removed references identifying Button Built while retaining substantial portions of the content originally created by Plaintiff.

337. Defendants thereby continued receiving commercial benefits from Plaintiff's and Dusty Button's creative works while excluding Plaintiff and Dusty Button from participation, compensation, and attribution.

338. Defendants' continued use of Plaintiff's and Dusty Button's creative works has generated and continues to generate commercial value for Defendants.

339. Defendants have refused to compensate Plaintiff for such continuing use.

340. Defendants have likewise refused to compensate Dusty Button for such continuing use.

341. Defendants continue to display and exploit such materials as of the filing of this action.

342. Plaintiff reserves the right to identify additional photographs, videos, written materials, and creative works through discovery and to amend this Complaint as necessary conform to the evidence.

l. Button Built’s Preexisting Goodwill, Commercial Recognition, and Industry Reputation

343. Long before Plaintiff's relationship with Defendants, Plaintiff operated under the Button Built name within the automotive industry.

344. Through years of continuous use, Button Built became recognized by consumers, manufacturers, dealers, automotive publications, sponsors, and industry professionals.

345. Prior to Defendants' recruitment of Plaintiff, Button Built maintained its own website, social-media presence, commercial relationships, sponsorship arrangements, and consumer following.

346. Button Built sold merchandise and automotive-related products under the Button Built name.

347. Automotive manufacturers routinely sought collaborations with Button Built because of the brand's reputation, creativity, marketing reach, and influence within the automotive community.

348. Button Built vehicles appeared in magazines, online publications, industry events, promotional campaigns, and automotive exhibitions throughout the United States.

349. Button Built became known for distinctive vehicle builds, original design concepts, photography, marketing, and content creation.

350. Sponsors provided products, components, and support to Plaintiff in exchange for exposure through the Button Built brand.

351. Plaintiff's vehicles, designs, photography, and marketing efforts generated substantial goodwill associated with the Button Built name.

352. Defendants were aware of Button Built's reputation before approaching Plaintiff regarding a business relationship.

353. Defendants specifically sought to associate Brixton with the goodwill and recognition already established by Button Built.

354. Defendants understood that affiliation with Button Built would increase the visibility, credibility, and commercial success of Brixton products.

355. Defendants repeatedly utilized the Button Built name, reputation, and goodwill in connection with the development, marketing, and commercialization of BB01.

356. The designation "BB01" was derived from and intended to signify "Button Built 01."

357. Defendants intentionally selected the designation "BB01" because the designation directly referenced the Button Built brand and communicated to consumers that the wheel line originated from or was associated with Plaintiff.

358. Defendants repeatedly emphasized Plaintiff's reputation, audience, vehicles, and industry influence as reasons for creating and marketing the BB01 Series.

359. Defendants promoted the BB01 Series as a Button Built wheel line and as products designed by Plaintiff.

360. Consumers, dealers, manufacturers, publications, and members of the automotive community came to associate BB01 with Plaintiff and the Button Built brand.

361. The goodwill associated with Button Built became a substantial component of BB01's commercial success.

362. Defendants benefitted from that goodwill and continue benefitting from that goodwill today.

FIRST CAUSE OF ACTION

(Breach of Oral Contract) – *against all Defendants*

363. Plaintiff incorporates by reference Paragraphs 1 through 362 as though fully set forth herein.

364. Plaintiff and Defendants entered into an oral agreement whereby Plaintiff would design, develop, promote, and commercialize the BB01 wheel line in conjunction with Defendants.

365. Defendants represented that Plaintiff would participate financially in the success of the wheel line and would be compensated in connection with the commercialization and sale of products developed through the parties' relationship.

366. In reliance upon Defendants' promises, Plaintiff devoted substantial labor, time, expertise, creative works, goodwill, industry relationships, marketing efforts, photography, videography, branding, and promotional activities toward the development and launch of BB01.

367. Plaintiff fully performed, or substantially performed, all obligations required of him under the parties' agreement.

368. Defendants accepted and benefitted from Plaintiff's performance.

369. Defendants breached the agreement by failing to compensate Plaintiff as promised.

370. Defendants further breached the agreement by continuing to commercialize the BB01 wheel line while excluding Plaintiff from participation and compensation.

371. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered damages in an amount to be proven at trial

SECOND CAUSE OF ACTION

(Breach of Implied-In-Fact Contract) - *against all Defendants*

372. Plaintiff incorporates by reference Paragraphs 1 through 362.

373. Through their words, conduct, and course of dealing, the parties entered into an implied-in-fact agreement pursuant to which Plaintiff would provide valuable design, marketing, branding, promotional, and creative services in exchange for compensation and participation in the resulting business venture.

374. Defendants knowingly requested, accepted, encouraged, and benefitted from Plaintiff's services.

375. Plaintiff reasonably expected compensation for those services.

376. Defendants knew or should have known that Plaintiff expected compensation.

377. Defendants accepted the benefits of Plaintiff's services and retained those benefits without compensation.

378. Defendants thereby breached the parties' implied agreement.

379. Plaintiff has suffered damages as a result.

THIRD CAUSE OF ACTION

(Quantum Meruit) - *against all Defendants*

380. Plaintiff incorporates by reference Paragraphs 1 through 362.

381. Plaintiff rendered valuable services to Defendants, including but not limited to wheel design, product development, branding, marketing, photography, videography, written content creation, event participation, promotional activities, and commercialization efforts.

382. Defendants requested, accepted, and benefitted from those services.

383. The reasonable value of Plaintiff's services substantially exceeds the compensation received by Plaintiff.

384. Defendants have been unjustly enriched by retaining the benefits of Plaintiff's services without providing fair compensation.

385. Plaintiff is entitled to recover the reasonable value of the benefits conferred upon Defendants.

FOURTH CAUSE OF ACTION

(Unjust Enrichment / Restitution) - *against all Defendants*

386. Plaintiff incorporates by reference Paragraphs 1 through 362.

387. Defendants obtained substantial economic benefits through Plaintiff's labor, creative works, goodwill, reputation, audience, marketing efforts, and industry relationships.

388. Defendants continue to retain and enjoy those benefits.

389. It would be inequitable and unjust for Defendants to retain those benefits without compensating Plaintiff.

390. Plaintiff is entitled to restitution, disgorgement, and all other equitable relief available under law.

FIFTH CAUSE OF ACTION

(Promissory Estoppel) - *against all Defendants*

391. Plaintiff incorporates by reference Paragraphs 1 through 362.

392. Defendants made clear promises that Plaintiff would benefit financially from the success of the BB01 wheel line.

393. Defendants reasonably expected Plaintiff to rely upon those promises.

394. Plaintiff did in fact rely upon those promises by devoting years of labor, expertise, creative effort, marketing resources, industry relationships, and goodwill to the project.

395. Plaintiff's reliance was reasonable and foreseeable.

396. Injustice can be avoided only by enforcing Defendants' promises.

397. Plaintiff has suffered damages as a result of such reliance.

SIXTH CAUSE OF ACTION

(False Association and False Endorsement – Lanham Act, 15 U.S.C. § 1125(a)) - *against all Defendants*

398. Plaintiff incorporates by reference Paragraphs 1 through 362.

399. Prior to and during the parties' relationship, Plaintiff and the Button Built brand developed substantial goodwill and recognition within the automotive industry.

400. The BB01 Series was used in interstate commerce in connection with the advertising, marketing, distribution, and sale of forged automotive wheels sold throughout the United States and internationally.

401. The designation "BB01" functioned as a source-identifying designation associated with Plaintiff and the Button Built brand within the automotive marketplace.

402. Consumers, dealers, distributors, publications, sponsors, and industry participants came to recognize BB01 as associated with Plaintiff and Button Built.

403. Upon information and belief, Defendants subsequently attempted to remove Plaintiff's attribution while continuing to benefit from the goodwill and commercial recognition associated with BB01.

404. Upon information and belief, Defendants continued distributing, authorizing, supplying, or benefiting from dealer marketing materials that identified the wheel line using the BB01 designation and Plaintiff's associated content.

405. Defendants' conduct has created actual confusion and is likely to continue causing confusion regarding Plaintiff's sponsorship, approval, endorsement, affiliation, association, or continuing involvement with Defendants' products.

406. Defendants knowingly benefitted from that confusion.

407. Defendants intentionally used Plaintiff’s name, Button Built brand identity, vehicles, photographs, and written marketing materials to create and reinforce consumer association between Plaintiff and the BB01 Series.

408. Defendants publicly represented that Plaintiff designed BB01.

409. Upon information and belief, Defendants have continued marketing substantially the same wheel design under revised nomenclature, including BF01, while removing Plaintiff’s name and Button Built attribution from certain promotional materials.

410. Defendants publicly represented that BB01 was associated with Button Built.

411. Upon information and belief, numerous authorized dealers, distributors, and resellers continue marketing the wheel line using the BB01 designation and continue identifying the product as associated with Button Built, including through use of Plaintiff's photographs, vehicles, and marketing materials.

412. Defendants encouraged consumers, dealers, publications, and members of the automotive community to associate BB01 with Plaintiff and Button Built.

413. Following the breakdown of the parties' relationship, Defendants continued marketing and commercializing the BB01 Series and/or rebranded version thereof while removing Plaintiff's attribution and continuing to exploit the consumer association between BB01 and Plaintiff's Button Built brand.

414. Upon information and belief, consumers encountering Defendants' products, dealer advertisements, websites, social-media content, and promotional materials are likely to believe that Plaintiff continues to sponsor, endorse, approve, authorize, participate in, or remain affiliated with the BB01 Series and products derived therefrom when no such relationship presently exists.

415. Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Plaintiff and Defendants, and as to the origin, sponsorship, or approval of Defendants' goods in violation of 15 U.S.C. § 1125(a).

416. Following the breakdown of the parties' relationship, Defendants continued exploiting the commercial value of that association while excluding Plaintiff from participation and compensation.

417. Upon information and belief, Defendants' use of revised product designations, including BF01, does not reflect a materially different product but rather the continued marketing of the same wheel design initially developed and promoted in association with Plaintiff and the Button Built brand.

418. Upon information and belief, Defendants continued displaying Plaintiff's vehicles, photographs, written materials, and other indicia associated with Plaintiff and Button Built.

419. Defendants continued benefitting from consumer recognition linking BB01 to Plaintiff and Button Built.

420. Defendants' conduct has caused and is likely to continue causing confusion concerning sponsorship, affiliation, endorsement, approval, origin, association, or connection between Plaintiff and Defendants' continuing commercialization of the wheel line.

421. Defendants have thereby obtained commercial benefits through the unauthorized exploitation of Plaintiff's identity, reputation, goodwill, and association with BB01.

422. Plaintiff has suffered damages as a result.

423. Monetary damages alone cannot adequately remedy the ongoing confusion, loss of goodwill, and continuing exploitation of Plaintiff's commercial identity, reputation, and association with the BB01 Series.

424. Unless enjoined, Defendants will continue engaging in such conduct.

SEVENTH CAUSE OF ACTION

(Violation of California Business & Professions Code § 17200) - *against all Defendants*

425. Plaintiff incorporates by reference Paragraphs 1 through 362.

426. Defendants' conduct constitutes unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code § 17200.

427. Defendants' conduct is unlawful because it includes, among other things, conduct actionable under the Lanham Act, breaches of contractual obligations, and the misappropriation of Plaintiff's goodwill, commercial identity, and creative works.

428. Defendants' conduct is unfair because Defendants have continued exploiting commercial value created through Plaintiff's labor, reputation, and promotional efforts while excluding Plaintiff from participation and compensation.

429. Defendants' conduct is fraudulent because it is likely to deceive consumers regarding the origin, sponsorship, affiliation, approval, and association of the BB01 Series.

430. Defendants have exploited Plaintiff's work, creative content, goodwill, reputation, and commercial identity while excluding Plaintiff from participation and compensation.

431. Defendants have retained benefits and profits generated through such conduct.

432. Defendants' conduct offends established public policy and threatens harm to both Plaintiff and consumers.

433. Plaintiff seeks restitution, injunctive relief, and all other relief authorized by statute.

EIGHTH CAUSE OF ACTION

(Declaratory Relief) - *against all Defendants*

434. Plaintiff incorporates by reference Paragraphs 1 through 362.

435. An actual and present controversy exists concerning the parties' respective rights relating to the BB01 wheel line, Plaintiff's creative works, Plaintiff's written materials, Plaintiff's photographs, Plaintiff's videos, Plaintiff's goodwill, and the continuing commercialization of products associated with Plaintiff and Button Built.

436. Plaintiff contends that Defendants possess no continuing right to exploit such materials and goodwill without Plaintiff's authorization and compensation.

437. An actual controversy exists because Defendants continue engaging in the conduct described herein while Plaintiff contends that such conduct is unauthorized.

438. Upon information and belief, Defendants sold BB01 and successor products throughout the United States through authorized dealers, distributors, and online channels and generated substantial revenues from those sales.

439. Plaintiff therefore seeks a judicial declaration concerning the parties' respective rights and obligations.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, and each of them, as follows:

1. For compensatory damages in an amount to be determined at trial;
2. For restitution and disgorgement of all revenues, profits, and benefits obtained through Defendants' wrongful conduct;
3. For recovery of the reasonable value of services, labor, creative works, goodwill, and benefits conferred upon Defendants;
4. For declaratory relief determining the parties' respective rights concerning the BB01 Series, Plaintiff's creative works, marketing materials, photographs, videos, goodwill, and commercial identity;
5. For preliminary and permanent injunctive relief prohibiting Defendants from falsely implying Plaintiff's sponsorship, endorsement, approval, affiliation, or association with Defendants' products or business activities;
6. For preliminary and permanent injunctive relief requiring Defendants to cease unauthorized use of Plaintiff's name, identity, likeness,

goodwill, photographs, videos, written marketing materials, and other creative works to the extent permitted by law;

7. For all remedies available under the Lanham Act, 15 U.S.C. § 1125(a);
8. For costs of suit incurred herein;
9. For pre-judgment and post-judgment interest as permitted by law; and
10. For such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully dated this 24th day of June, 2026,

Mitchell Taylor Button (*Pro se)*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed through the District Court of Central California's electronic filing system on June 24th, 2026.

Dated this 24th day of June, 2026,

/s/______________________________

Signature of Plaintiff Mitchell Taylor Button (*Pro se)*